**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GREGORY ARNOLD,<br><br>                    Plaintiff,<br><br>v.<br><br>CORECIVIC OF TENNESSEE, LLC,<br><br>                    Defendant. | Case No.: 20-CV-0809 W (MDD)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS [DOC. 6]** |

Pending before the Court is Defendant Corecivic of Tennessee, LLC's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Gregory Arnold opposes.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss [Doc. 6].

**I.    BACKGROUND**

In this lawsuit, Plaintiff Gregory Arnold is suing his former employer, Defendant Corecivic of Tennessee, LLC, for failing to provide a safe working environment during

1

the COVID-19 pandemic. Arnold was a Detention Officer for Corecivic at the Otay Mesa Detention Center (the "Facility"). According to the Complaint, as of April 27, 2020, the Facility had approximately 142 inmates/detainees and numerous staff members test positive for COVID-19. (*Compl.* [Doc. 1] ¶ 56.) Arnold contends that despite these conditions, Corecivic failed to implement policies to adequately deal with the pandemic. As a result, Arnold contends the workplace conditions were so unsafe and unhealthy that he had no reasonable alternative but to resign.

### A. General Background

Arnold is a 60-year-old male who takes medication regularly for high blood pressure. (*Compl.* ¶ 57.) Arnold also lives with family members who have a heightened risk of developing severe illness from COVID-19, including his son who is asthmatic. (*Id.* ¶¶ 57, 99.)

Arnold contends that in approximately March 2020, as the number of COVID-19 cases were rapidly increasing, he and other Detention Officers were prohibited from wearing face coverings inside the housing units and other areas of the Facility while working in close proximity with detainees. (*Compl.* ¶¶ 65, 66.) Officers who were responsible for patting down detainees as needed were also not provided gloves or masks (*id.* ¶ 68) and on the rare occasion officers were able to find gloves, they were often too small (*id.* ¶ 67). Defendant also alleges Defendant failed to adequately respond to the pandemic by, for example:

- failing to provide sanitizer to staff members (*id.* ¶¶ 40, 69);
- requiring staff members to repeatedly use dirty rags (*id.* ¶¶ 37, 72, 88);
- failing to sanitize frequently touched surfaces regularly (*id.* ¶¶ 74-78);
- failing to conduct deep cleaning of the Facility (*id.* ¶ 79);
- waiting until mid to late March to begin triaging persons and doing so when they were already inside the Facility (*id.* ¶¶ 88, 89);
- failing to implement social distancing practices (*id.* ¶¶ 83, 91, 101);

- holding briefing sessions in small break rooms with 30–40 staff members (*id.* ¶ 81); and
- permitting detainees exposed to COVID-19 to participate in recreational activities without wearing masks (*id.* ¶ 91).

### B. Circumstances leading to Arnold's constructive discharge

On or around March 30, 2020, Arnold was tasked with guarding a detainee with Tuberculosis and another detainee who was being tested for COVID-19 because of a cough and high fever. (*Compl.* ¶ 89.) Out of an abundance of caution, Arnold wore an N95 mask and gloves while attending to the detainees. (*Id.*)

The next day, Arnold observed another detainee walking around his housing unit with flu-like symptoms. (*Compl.* ¶ 96.) That same day, Arnold was informed that multiple staff members at the Facility were infected with COVID-19. (*Id.*) And one of the infected staff members was handing out equipment to Corecivic's other staff members at the Facility. (*Id.* ¶ 107.)

Corecivic knew Arnold had underlying medical conditions that made him more susceptible to exposure to COVID-19. (*Compl.* ¶ 99.) Corecivic also knew Arnold lived with his son who suffered from asthma. (*Id.*) Despite pleading with Corecivic to implement protocols to decrease the risk of transmission of COVID-19 in the Facility, Arnold was instructed by the warden not to wear a mask in front of detainees/inmates and staff. (*Id.* ¶ 103.) Because Arnold was concerned for his health and the safety of those around him, Arnold felt he was left with no viable alternative but to resign due to the hazardous work environment that Corecivic created. (*Id.* ¶108.)

On May 29, 2020, Arnold filed this lawsuit alleging the following causes of action against Corecivic: (1) Wrongful Constructive Termination in Violation of Public Policy based on California Labor Code §§ 6400, *et seq.*; (2) Wrongful Constructive Termination in Violation of Public Policy based on California Code of Regulations, Title 8, §§ 5141, 3380; (3) Wrongful Constructive Termination in Violation of Public Policy based on 29

U.S.C. § 654(a)(1); (4) Wrongful Constructive Termination in Violation of Public Policy based on 29 C.F.R. §§ 1910.132; (5) Negligent Supervision; and (6) Intentional Infliction of Emotional Distress. Corecivic now seeks to dismiss the Complaint.

## II.  LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986).

Complaints must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

## III.  DISCUSSION

### A.  Arnold's Constructive Termination Causes of Action (1st through 4th)

Arnold's first through fourth causes of action allege wrongful constructive termination in violation of public policy based on California Labor Code §§ 6400 *et seq.*

(first cause of action), California Code of Regulations, Title 8, §§ 5141, 3380 (second cause of action), 29 U.S.C. § 654(a)(1) (third cause of action), and 29 C.F.R. §§ 1910.132 (fourth cause of action).[1]  Corecivic contends these causes of action must be dismissed for two main reasons.

First, Corecivic contends the causes of action are insufficiently pled because the Complaint fails to allege facts showing Arnold was "terminated 'for performing an act that public policy would encourage, or refusing to do an act that public policy would discourage." *P&A* [Doc. 6] 2:2–5.[2])  According to Corecivic's arguments, these are the only conditions that may give rise to wrongful discharge in violation of public policy.

In Rojo v. Kliger, 52 Cal.3d 65 (1990), plaintiffs alleged "they were continually subjected to sexual harassment and demands for sexual favors by defendant, and that their refusal to tolerate that harassment or acquiesce in those demands resulted in the wrongful discharge of Ms. Maloney and the constructive wrongful discharge of Ms. Rojo." Id. at 89.  In opposing defendant's summary-judgment motion, plaintiff requested leave to amend the complaint to assert a cause of action for "tortious discharge in contravention of public policy." Id. at 71.  Similar to Corecivic's argument, defendant opposed the request by arguing plaintiffs' "claims should be limited to situations where, as a condition of employment, the employer 'coerces' an employee to commit an act that violates public policy, or 'restrains' an employee from exercising a fundamental right, privilege or obligation." Id. at 91.  The California Supreme Court found the argument "without merit" and explained:

> Although decided in the factual contexts of coercion (*Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980)) and restraint (*Foley v. Interactive Data*

---

[1] Arnold contends each of these statutes and regulations pertain to workplace safety.  (*See Compl.* ¶¶ 114–121, 135–138, 153–156, 170–172.)

[2] In its moving papers, Corecivic appears to argue this ground for dismissal is separate from Arnold's alleged failure to allege he "was subjected to a constructive termination in retaliation for engaging in protected activity." (*See P&A* 2:5–7: "Plaintiff's Complaint is *also* devoid . . . ." (emphasis added).)  But in its reply, Corecivic clarifies it is part of the same argument.  (*See reply* [Doc. 8] 1:4–14.)

> *Corp.*, 47 Cal.3d 654 (1988)), neither *Tameny* nor *Foley* excludes wrongful discharge claims based solely on sex discrimination or sexual harassment. To the contrary, the cases strongly imply that an action for wrongful discharge will lie when, as here, the basis of the discharge contravenes a fundamental public policy.

Id.  In addition to rejecting defendant's theory, the Supreme Court also explained that plaintiffs' allegations, "in any event, easily satisfy defendant's own criteria" because they assert, "in essence, that they were terminated for refusing to engage in conduct that violated fundamental public policy, to wit nonconsensual sexual acts" and "in retaliation for attempting to exercise a fundamental right . . . to be free from sexual assault and harassment." Id.

Under Rojo, Corecivic's argument lacks merit for two reasons.  First, Rojo explicitly rejected Corecivic's contention that Arnold must allege facts showing he was terminated for performing an act that public policy would encourage, or refusing to do an act that public policy would discourage.  Second, as Arnold points out in his opposition (*Opp'n* [Doc. 7] 11:25–28), even under Corecivic's "criteria" Arnold has stated a claim.  In essence, Arnold is alleging he was constructively terminated for refusing to do something the State's public policy discouraged: work in an environment that was highly susceptible to COVID-19 transmission and in a manner that was likely to further the spread of the disease.

Notably, in its reply, Corecivic fails to address Arnold's contention that his allegations also meet its criteria for pleading a cause of action for wrongful discharge in violation of public policy.  Instead, Corecivic contends Arnold "does not cite a single case involving a claim for wrongful termination in violation of public policy ***that does not involve*** a termination based on an employee's refusal to engage in an act that violates public policy or for performing an act that public policy encourages." (*Reply* [Doc. 8] 2:1–5.)  Corecivic then asserts that Rojo "involved allegations of a termination for refusing to perform acts in violation of public policy." (*Id.* 2:5–8.)  This argument is

surprising given Rojo's explicit rejection of Corecivic's argument and statement that even under "defendant's own criteria" plaintiffs stated a claim.

Corecivic's second argument seems to be that Arnold's first through fourth causes of action fail because the Complaint does not allege facts showing "he was subjected to intolerable working conditions . . . in excess of those faced by other workers." (*P&A* 2:9–14.) In support of this contention, Corecivic relies on Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238 (1994).

In Turner, the California Supreme Court evaluated "what kinds of action or conditions are sufficient to convert what is ostensibly a voluntary quit into a discharge." Id. at 1245. The court explained the "conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." Id. at 1246. Generally, this requires the adverse working conditions "must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." Id. at 1247. "The essence of the test is whether, under all the circumstances, the working conditions are so unusually adverse that a reasonable employee in plaintiff's position . . . would have felt compelled to resign." Id. at 1247 (citations omitted). The court also stated the issue is "normally a question of fact." Id. at 1247.

In the context of emphasizing that the working conditions must be "unusually extraordinary and egregious," the court quoted the following language from a Fourth Circuit case:

> An employee may not be unreasonably sensitive to his [or her] working environment .... Every job has its frustrations, challenges, and disappointments; these inhere in the nature of work. An employee is protected from ... unreasonably harsh conditions, *in excess of those faced by his [or her] co-workers*. He [or she] is not, however, guaranteed a working environment free of stress.

Id. at 1247 (quoting Goldsmith v. Mayor and City of Baltimore, 987 F.2d 1064, 1072 (1993) (brackets in original)).  Although the italicized language lends some support to Corecivic's argument, at least one other court has rejected Corecivic's contention that Turner requires differential treatment.  In Brooks v. Corecivic of Tennessee LLC, 2020 WL 5294614 * 5 (S.D. Cal. 2020), the district court rejected the argument, noting that the quoted language was dicta and explaining that differential treatment did not make Turner's "ultimate formulation of the elements of constructive discharge . . . ." Id.  The court also pointed out the complete lack of any other authority supporting Corecivic's argument and the lack of differential treatment from the applicable California jury instruction.  Id.  This Court agrees with Brooks' reasoning, particularly given Corecivic's inability to cite a single case dismissing a constructive discharge claim because the plaintiff failed to plead differential treatment.

Finally, under the standards applicable to the present motion, Arnold has pled facts indicating the working conditions were "intolerable."  The Complaint alleges that by April 2020, there were over 200 known cases of COVID-19 at the Facility.  It was also well known that some infected by COVID-19 were asymptomatic, yet capable of also spreading the disease.  The Complaint further alleges that despite these conditions, Corecivic not only failed to implement safety protocols to prevent or slow the spread of the disease, but fostered conditions exacerbating its spread.  Based on these facts, the Court finds a reasonable juror could find the working conditions faced by Arnold, a person with increased risk of severe COVID-19 disease, were intolerable.

For all these reasons, the Court finds Arnold's first through fourth causes of action are sufficiently pled.

### B. Arnold's Negligent Supervision and Intentional Infliction of Emotional Distress Causes of Action (5th and 6th)

Arnold's fifth and sixth causes of action allege negligent supervision and intentional infliction of emotional distress.  Corecivic argues these causes of action are

barred by California's Workers' Compensation exclusivity.  (*P&A* 9:24–11:4, 11:6–13:3.)  Arnold responds that the "workers' compensation scheme is inapplicable particularly where—as here—an 'employer's conduct … contravenes fundamental public policy' and/or 'exceeds the risks inherent in the employment relationship." (*Opp'n* 16: 7–13, citing Miklosy v. Regents of U. of Cal., 44 Cal.4th 876, 902 (2008).)  According to Arnold, his fifth and sixth causes of action satisfy both conditions because he alleges Corecivic's conduct violated fundamental public policy and exceeded the risk inherent in the employment relationship.  (*Id.* 17:10–12.)  The Court is not persuaded by Arnold's arguments.

Under California Labor Code § 3600, an "employer is liable for injuries to its employees arising out of and in the course of employment, and section 3601 declares that where the conditions of workers' compensation exist, the right to recover such compensation is the exclusive remedy against the employer."  Johns-Manville Products Corp. v. Superior Court, 287 Cal. 3d 465, 467–468 (1980).  The exclusivity rule applies even where the employer's misconduct is serious, willful or intentional, but "in such cases Labor Code section 4553 dictates that the employee's recovery is increased by one-half."  Vuillemainroy v. American Rock & Asphalt, Inc., 70 Cal.App.4th 1280, 1283 (1999).

The exclusivity rule, however, is subject to exceptions for certain types of intentional employer misconduct.  Vuillemainroy, 70 Cal.App.4th at 1284.  In Fermino v. Fedco, Inc., 7 Cal.4th 701 (1994), the California Supreme Court explained the existance of a "tripartite system for classifying injuries arising in the course of employment."  Id. at 713.

> First, there are injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system.  Second, there are injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation under section 4553.  Third, there are certain types of intentional employer

> conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought.

Id. at 713–714. With regard to the third category, the court further explained it involved employer "behavior that could not be considered a normal risk of employment" or "violated public policy and therefore fell outside the compensation bargain." Id. at 714–715. In a footnote, however, the court explicitly limited the reach of the violation-of-public-policy exception to the exclusivity rule:

> In stating that false imprisonment is outside the scope of the compensation bargain because it constitutes a crime against the person of the employee, we do not mean to suggest that regulatory crimes such as violations of health and safety standards or special orders are actions outside the normal course of employment. On the contrary, the Act includes such regulatory crimes within its scope. (See §§ 6423, 4553.1; see also *Johns-Manville*, supra, 27 Cal.3d at pp. 474-475 [workers' compensation the only remedy for injuries resulting from willful failure to comply with government regulations regarding dust levels].) It is an expected part of the compensation bargain that industrial injury will result from an employer's violation of health and safety, environmental and similar regulations. What we hold today, rather, is that those classes of intentional employer crimes against the employee's person by means of violence and coercion, such as those crimes numerated in part 1, title 8 of the Penal Code, violate the employee's reasonable expectations and transgress the limits of the compensation bargain.

Id. at n. 7.

Consistent with this footnote, California courts have refused to apply the exception where the employer is alleged to have violated health and safety regulations. For example, in Johns-Manville, 287 Cal. 3d 465, plaintiff was an asbestos manufacturing employee who had contracted various diseases related to long-term exposure to asbestos. The employee sued his employer for, among other things, concealing from the employee the knowledge that working with asbestos was dangerous, failing to provide proper protective equipment, and knowingly violating government regulations relating to the dust levels in the plan. With regard to these claims, the Supreme Court found the claims were barred because they fell under the second category of cases, under which an

employee is entitled to extra compensation under section 4553 of the worker's compensation law.  The court explained these cases involve "instances in which an employer 'put his mind' to the existence of workplace dangers but failed to take corrective action, and the extra compensation provision of that section were designed to specially sanction such deliberate employer wrongdoing." Id. at 474.

Similar to the claim rejected in Johns-Manville, Arnold seeks to hold Corecivic liable for failing to provide proper protective equipment and violating safety regulations. Under California law, such claims are barred by California's workers compensation exclusivity.  See also Brooks, 2020WL 5294614 (finding workers' compensation exclusivity barred claims for negligent supervision and intentional infliction of emotional distress arising from Corecivic's failure to protect workers from COVID-19 and violation of health and safety regulations).

## IV.  CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Corecivic's motion to dismiss [Doc. 6] and **DISMISSES WITHOUT LEAVE TO AMEND** the fifth cause of action for negligent supervision and the sixth cause of action for intentional infliction of emotional distress.

**IT IS SO ORDERED**.

Dated:  January 6, 2021

_____
Hon. Thomas J. Whelan
United States District Judge